Roger KRUEGER, Jeffrey Olson, Deborah Tuckner, Susan Wones, and Margene Bauhs, individually and as representatives of a class of similarly situated persons, and on behalf of the Ameriprise Financial 401(k) Plan, Plaintiffs,

v.

AMERIPRISE FINANCIAL, INC., Ameriprise Financial, Inc. Employee Benefits Administration Committee, Michelle Rudlong, Ameriprise Financial, Inc. 401(k) Investment Committee, Compensation and Benefits Committee of the Board of Directors of Ameriprise Financial, Inc., Martin S. Solhaug, and Brent Sabin, Defendants.

No. 11–cv–02781 (SRN/JSM).

United States District Court, D. Minnesota.

Signed May 23, 2014.

560

See also 2014 WL 1117018.

Jerome J. Schlichter, Michael A. Wolff, Mark G. Boyko, Troy A. Doles, and Heather Lea, Schlichter Bogard & Denton, St. Louis, MO; and Thomas W. Pahl and Thomas A. Harder, Foley & Mansfield, PLLP, Minneapolis, MN, for Plaintiffs.

Stephen P. Lucke and Kirsten E. Schubert, Dorsey & Whitney LLP, Minneapolis, MN; and Benjamin G. Bradshaw and Shannon M. Barrett, O'Melveny & Myers LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

SUSAN RICHARD NELSON, District Judge.

### I. INTRODUCTION

This matter is before the Court on Plaintiffs Roger Krueger, Jeffrey Olson, Deborah Tuckner, Susan Wones, and Margene Bauhs' (collectively "Plaintiffs") Motion to Certify Class Action [Doc. No. 215] and Plaintiffs' Motion to Strike Supplemental Memorandum in Opposition to Plaintiffs' Motion to Certify Class Action [Doc. No. 287] ("Motion to Strike"). For the reasons stated below, the Court grants Plaintiffs' Motion to Certify Class Action and denies Plaintiffs' Motion to Strike.

### II. BACKGROUND

#### A. The Plan [1]

Defendant Ameriprise Financial, Inc. ("Ameriprise") makes available to eligible employees and retirees of Ameriprise and its subsidiaries and affiliates the Ameriprise Financial 401(k) retirement benefit plan (the "Plan"). (See Declaration of Brent Sabin dated July 2, 2013 [Doc. No. 152] ("Sabin Decl."), Ex. D at 1–2, 36.) The Plan is a defined contribution plan in which participants may direct their Plan balances among different investment options. (See id. at 1, 10–20.) The Plan became effective on October 1, 2005, (id., Ex. A § 1.2), and it has had at least 10,000 participants annually from 2005 through 2012, (Declaration of Kurt Struckhoff dated Oct. 1, 2013 [Doc. No. 218] ¶ 3 & Ex. 1).

Ameriprise was once part of American Express Companies, and the Plan duplicated many of the investment options that had been available through the American Express 401(k) plan when Ameriprise spun off from American Express in October 2005. (See Sabin Decl., Ex. D at 1, 10, 13; id., Ex. A §§ 1.1, 1.2.) When the Plan was first developed, it offered participants three tiers of investment options. (See Declaration of Shannon Barrett dated Nov. 1, 2013 [Doc. No. 231], Ex. C.) [2] All but one of the investment options in Tiers 1 and 2 were Ameriprise-affiliated mutual funds and co-mingled trusts. (See id.) Tier 3 was a self-directed brokerage window. (See id.)

Two named fiduciary committees have primary responsibility for administering the Plan. Ameriprise's Employee Benefits Administration Committee ("EBAC") is the Plan administrator and is responsible for determining benefits eligibility and construing Plan documents, and the Ameriprise Financial, Inc. 401(k) Plan Investment Committee ("Investment Committee") selects and monitors the investment options in the Plan lineup and directs how investment options for the Plan are invested. (See Sabin Decl., Ex. A §§ 2.4, 6.3, 10.3, 10.4.) Ameriprise's Compensation and Benefits Committee of the Board of Directors ("CBC") has the authority to appoint and to remove the EBAC's members. (Id. § 10.1.)

---

1. The factual background of this case is discussed in more detail in this Court's Memorandum Opinion and Order on Defendants' Motion for Summary Judgment on Statute of Limitations Grounds [Doc. No. 323].

2. Exhibit C was filed under seal.

The Plan's assets are held by trustees selected by the Investment Committee. (*Id.*, Ex. A §§ 12.1, 12.2.) Ameriprise Trust Company ("ATC") was the original trustee and record-keeper of the Plan. (*Id.* ¶ 34 & Ex. B §§ 1.2(m), 6.2.) Ameriprise sold ATC's record-keeping business to Wachovia Bank, N.A. ("Wachovia") in June 2006, and Wachovia became the Plan's trustee and record-keeper in April 2007.[3] (*Id.* ¶ 34.)

## B. Plaintiffs' Claims

Plaintiffs are current and former participants in the Plan. Each Plaintiff, with the exception of Mr. Olson who joined in 2007, participated in the Plan from its inception in October 2005. (*See* Declaration of Shannon Barrett dated July 3, 2013 [Doc. No. 149], Exs. AA (Olson Dep.) 46:5–11, BB (Krueger Dep.) 43:10–13, 71:22–72:6, CC (Bauhs Dep.) 101:22–24, DD (Wones Dep.) 20:17–24:3, EE (Tuckner Dep.) 35:16–36:9, 46:2–6.) Defendants are the individuals and entities that Plaintiffs allege are the fiduciaries who breached their duties to the Plan and are liable for the resulting losses. In particular, Plaintiffs believe that Defendants selected and retained proprietary funds despite their higher expenses and poor performance compared to other available options and selected higher-cost versions of those funds without considering the lower-cost versions. (*See* Mem. in Supp. of Pls.' Mot. to Certify Class Action [Doc. No. 217] ("Pls.' Class Cert. Mem.") at 6–8.) In addition, Plaintiffs contend that Defendants failed to negotiate a reasonable record-keeping fee or put the Plan's services up for competitive bidding, thereby causing the Plan to pay unreasonable record-keeping fees. (*See id.* at 8–10.)

Plaintiffs filed this Employee Retirement Income Security Act ("ERISA") lawsuit on September 28, 2011. In their Second Amended Complaint, Plaintiffs bring seven counts pursuant to 29 U.S.C. § 1132(a)(2) and (3) on behalf of the Plan. (Second Amended Complaint [Doc. No. 228] ("2d Am. Compl.") ¶ 1.) Count I asserts that Defendants' selection and retention of proprietary investment options constituted breaches of Defendants' duties of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A) and (a)(1)(B). (*Id.* ¶¶ 107–17.) Count II alleges that Ameriprise and the CBC breached their duties of loyalty and prudence by failing to properly monitor and replace the fiduciaries over whom they had authority or control who caused losses to the Plan. (*Id.* ¶¶ 118–25.) Counts III and IV assert that Defendants engaged in prohibited transactions in violation of 29 U.S.C. §§ 1106(a) and (b), respectively. (*Id.* ¶¶ 126–40.) Count V alleges that Defendants breached their fiduciary duties of prudence and loyalty, and engaged in a prohibited transaction, by using ATC as the Plan's record-keeper in order to increase the ultimate sale price of the ATC record-keeping business to Wachovia. (*Id.* ¶¶ 141–51.) Count VI alleges co-fiduciary liability against Ameriprise, asserting that Ameriprise knowingly participated in these alleged breaches of fiduciary duties and prohibited transactions. (*Id.* ¶¶ 152–57.) Count VII alleges that Defendants breached their fiduciary duties of prudence and loyalty, and engaged in prohibited transactions, by making the Plan pay excessive fees to its record-keepers. (*Id.* ¶¶ 158–67.) Plaintiffs seek, among other relief, restoration to the Plan of the losses caused by the alleged breaches, removal of Defendants from positions of trust with respect to the Plan, rescission of the Plan's investments in proprietary funds and rescission of the Plan's contracts with Wells Fargo/Wachovia for administrative services, and implementation of a process for the selection of investment options and of a Plan record-keeper. (*See id.* ¶¶ 184–201.)

In July 2013, Defendants filed a motion for summary judgment on statute of limitations grounds. While that motion was pending, Plaintiffs filed their motion for class certification, a supporting memorandum [Doc. No. 217], and a declaration [Doc. No. 218]. Defendants submitted an opposition memorandum [Doc. No. 230][4] and three declarations [Doc. Nos. 231, 232, 234]. And, Plaintiffs

---

**3.** As the result of a merger, Wachovia Retirement Services was re-branded as Wells Fargo Institutional Retirement and Trust in March 2010. (Declaration of Brent Sabin dated Apr. 10, 2012 [Doc. No. 60], Ex. 5 at 50.)

**4.** Defendants' opposition memorandum was filed under seal.

filed a reply brief [Doc. No. 244] and declaration [Doc. No. 245]. The matter was heard on December 10, 2013. At the hearing, the Court granted Plaintiffs' request to submit supplemental briefing. Plaintiffs thereafter submitted a supplemental brief in support of their motion [Doc. No. 268], and Defendants submitted a supplemental opposition brief [Doc. No. 277]. Plaintiffs then moved to strike Defendants' supplemental brief.

In March 2014, the Court granted, in part, Defendants' Motion for Summary Judgment on Statute of Limitations Grounds. (Mem. Op. and Order [Doc. No. 323] at 40.) The Court dismissed as time-barred the prohibited transaction claims alleged in Counts III, IV, V, and VII, as well as the breach of fiduciary duty claim alleged in Count V. (*See id.* at 14.) As noted in the Court's Order, Defendants did not seek summary judgment on Plaintiffs' claims to the extent that they were based on the Plan's inclusion of the Columbia Contrarian Core Fund. (*Id.* at 9 n. 4.) Thus, the remaining claims include Plaintiffs' prohibited transaction claims based on the Columbia Contrarian Core Fund and the breach of fiduciary duty claims alleged in Counts I, II, VI, and VII. (*See id.* at 9 n. 4, 14.)

## III. DISCUSSION

### A. Motion to Strike

Plaintiffs have moved to strike Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion to Certify Class Action. At the hearing on the motion for class certification, Defendants' counsel argued that, under the Eighth Circuit's decision in *Brown v. Medtronic, Inc.*, 628 F.3d 451 (8th Cir.2010), a plan participant lacks standing to pursue claims based on funds in which the participant did not invest. (*See* Tr. of Dec. 10, 2013, Hr'g on Pls.' Mot. to Certify Class Action [Doc. No. 302], 34:4–16.) On rebuttal, Plaintiffs' counsel attempted to distinguish *Brown* and proceeded to discuss the proper manner of evaluating standing. (*See id.* at 41:15–42:21.) Plaintiffs' counsel then offered to submit "additional briefing on that," and the Court asked the parties to work out a briefing schedule. (*Id.* 42:23–43:3.) The parties each eventually submitted a supplemental brief.

Plaintiffs now argue that Defendants' supplemental brief extends Defendants' opposition to the motion for class certification beyond the 12,000 words allowed by Local Rule 7.1, extends Defendants' time to argue in opposition to Plaintiffs' motion, and goes beyond the limited issue the Court asked the parties to address. (Pls.' Mem. in Supp. of Mot. to Strike [Doc. No. 289] at 3.) Defendants argue that they offered to seek clarification from the Court, and that their brief merely discusses *Brown*, demonstrates the correctness of the holding, and elaborates on its application to the present facts. (Defs.' Mem. in Opp. to Pls.' Mot. to Strike [Doc. No. 292] at 1–3.)

 As courts in this District have noted, "'there is no such thing as a motion to strike—at least when the paper being targeted is a memorandum.'" *White v. Nat'l Football League*, Civ. No. 4–92–906(DSD), 2013 WL 362901, at *1 (D.Minn. Jan. 30, 2013) (quoting *Carlson Mktg. Grp., Inc. v. Royal Indem. Co.*, No. 04–CV–3368 (PJS), 2006 WL 2917173, at *2 (D.Minn. Oct. 11, 2006)). However, the Court will look for guidance to Rule 12(f) of the Federal Rules of Civil Procedure, which authorizes a court to strike matter from a pleading. *See Carlson Mktg. Grp., Inc.*, 2006 WL 2917173, at *2. Under that Rule, "the district court enjoys 'liberal discretion.'" *Stanbury Law Firm, P.A. v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir.2000) (citation omitted).

 The Court finds it appropriate to deny Plaintiffs' Motion to Strike. In granting Plaintiffs' request to submit supplemental briefing, the Court imposed neither a word limit nor a deadline. Moreover, Defendants' brief addresses the issue of standing and, in particular, the import of the Eighth Circuit's opinion in *Brown*. While Defendants' brief on these topics was considerably lengthier than Plaintiffs' brief, it did not impermissibly stray beyond those topics. Therefore, the Court declines to strike Defendants' Supplemental Memorandum in Opposition to Plaintiffs' Motion to Certify Class Action from the record.

## B. Standing

■ Prior to discussing the merits of Plaintiffs' motion for class certification, the Court will address Defendants' arguments relating to standing. A demonstration of standing "requires a showing of 'injury in fact' to the plaintiff that is 'fairly traceable to the challenged action of the defendant,' and 'is likely [to] be redressed by a favorable decision.'" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 591 (8th Cir.2009) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Here, Defendants argue: (1) that Plaintiffs lack standing to pursue claims based on funds in which they did not invest, or in which they did invest and which outperformed the benchmark, and (2) that a class must be defined such that everyone within it has standing. (*See* Defs.' Mem. in Opp. to Pls.' Mot. to Certify Class Action [Doc. No. 230] ("Defs.' Class Cert. Opp." at 29); Defs.' Supplemental Mem. in Opp. to Pls.' Mot. to Certify Class Action [Doc. No. 277] ("Defs.' Supp. Opp.") at 5–8.) On the other hand, Plaintiffs argue: (1) that the way in which Defendants' alleged unlawful conduct against the Plan manifested itself in particular instances is simply the *effect* of the breaches and that a participant who invested in one fund is in the same position as a participant who invested in any of the other funds, and (2) that Defendants overstate the specificity with which the class must be defined at this stage of the litigation. (Reply in Supp. of Pls.' Mot. to Certify Class Action [Doc. No. 244] ("Pls.' Reply") at 6–7, 15.)

In support of their first argument, Defendants point to the Eighth Circuit's opinions in *Hall v. LHACO, Inc.,* 140 F.3d 1190 (8th Cir.1998), and *Brown v. Medtronic, Inc.,* 628 F.3d 451 (8th Cir.2010). In *Hall,* the court found that the named plaintiff lacked standing to pursue his ERISA claims because he had sued a party that no longer had any connection to the plan. 140 F.3d at 1196–98. The court noted that the named plaintiff therefore could not represent a class of persons asserting that claim. *Id.* In *Brown,* the plaintiff alleged that the defendants failed to adequately disclose adverse information about two separate products, resulting in artificial inflation of the company stock price and a subsequent drop when the information

was disclosed. 628 F.3d at 453. The Eighth Circuit determined that the plaintiff lacked standing to pursue his claims to the extent that they were based on the disclosures relating to one of the products because he had liquidated his shares—realizing a financial benefit—and had no ongoing financial stake in the plan prior to the related disclosure and drop in price. *Id.* at 454, 457–58. In such a situation, the court held, the plaintiff suffered no loss traceable to the defendants' challenged actions and, therefore, presented no redressable injury. *See id.* at 458. While the plaintiff did have standing to pursue his claim based on the disclosures related to the other product, the court found that he failed to state a claim upon which relief could be granted. *Id.* at 459.

■ These cases demonstrate that a plaintiff who has sued a party from whom recovery may not be had or who has suffered *no* injury does not have standing to sue on behalf of himself, let alone on behalf of a plan under § 1132(a)(2). However, these cases do not address the interplay between a named plaintiff's "standing" requirements and his ability to represent a class in an ERISA action. And, as the Eighth Circuit has warned, Article III's injury-in-fact requirement must not be conflated with a plaintiff's potential cause of action—"the concepts are not coextensive." *Braden,* 588 F.3d at 591 (citation omitted). As described by the Court of Appeals:

> Article III generally requires injury to the plaintiff's personal legal interests, but that does not mean that a plaintiff with Article III standing may only assert his own rights or redress his own injuries. To the contrary, constitutional standing is only a threshold inquiry, and "so long as [Article III] is satisfied, persons to whom Congress has granted a right of action, either expressly or by clear implication, may have standing to seek relief on the basis of the legal rights and interests of others." In such a case, a plaintiff may be able to assert causes of action which are based on conduct that harmed him, but which sweep more broadly than the injury he personally suffered.

*Id.* at 592 (internal citations omitted). Thus, in *Braden v. Wal–Mart Stores, Inc.*, the Eighth Circuit found that a plaintiff in a proposed ERISA class action had standing because he had alleged an injury to his own plan account that was fairly traceable to, and redressable by, the defendants. *Id.* (citation omitted). Whether recovery could be had for the period before the plaintiff had suffered injury was not a question of standing, the court noted, but rather a question of whether ERISA granted the plaintiff a right to such relief. *Id.* at 593 (citation omitted). Because 29 U.S.C. § 1132(a)(2) allows a plan participant to bring suit in a representative capacity on behalf of a plan, the court found that the plaintiff could "seek relief under § 1132(a)(2) *that sweeps beyond his own injury.*" [5] *Id.* (emphasis added). Thus, the court held:

> Since [the plaintiff] has standing under Article III, we conclude that § 1132(a)(2) provides him a cause of action to seek relief for the entire Plan. The relief that may be appropriate, should [the plaintiff] succeed, is not necessarily limited to the period in which he personally suffered injury.

*Id.*

■■■ Accordingly, a plaintiff's standing to sue a plan's fiduciaries, and that same plaintiff's ability to seek relief that goes beyond his own injuries, are separate issues. Here, there is no allegation that Plaintiffs have suffered *no* injury or that their alleged injuries are not traceable to parties from whom recovery can be had—the Plan and the Plan's fiduciaries. Therefore, unlike the plaintiffs in *Brown* and *Hall*, Plaintiffs here have standing to assert their claims against Defendants. Plaintiffs bring these claims pursuant to 29 U.S.C. § 1132(a)(2) and (3) and, as noted in *Braden*, § 1132(a) allows Plaintiffs to bring suit " 'in a representative capacity on behalf of the [P]lan as a whole.' " *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 & n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). Therefore, Plaintiffs may seek relief, on behalf of the Plan, that sweeps beyond their own injuries. Whether the action can proceed as a class action with Plaintiffs acting as the representatives of a class of the Plan's participants whose breach of fiduciary duty claims may be based on injuries to funds different than those in which Plaintiffs invested or suffered injuries is yet another separate issue. The answer to that question depends upon whether Plaintiffs can satisfy the requirements of Rule 23 and is discussed below.[6]

■■■ In support of their second "standing" argument, Defendants rely on *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir.2010). In *Avritt*, the Eighth Circuit determined that, although each class member need not submit evidence of standing, "[a] class must ... be defined in such a way that anyone within it would have standing." *Id.* at 1034 (citation and internal quotation marks omitted). In particular, Defendants argue that Plaintiffs can only represent participants who suffered losses under the theories alleged in the Complaint. (Defs.' Supp. Opp. at 5, 8.) The Court agrees and will

---

**5.** In support of its conclusion, the Eighth Circuit cited to the following statement by the Sixth Circuit: " '[T]he standing-related provisions of ERISA were not intended to limit a claimant's right to proceed under Rule 23 on behalf of all individuals affected by the [fiduciary's] challenged conduct, regardless of the representative's lack of participation in all the ERISA-governed plans involved.' " *Braden*, 588 F.3d at 593 (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.1998)).

**6.** Despite this discussion in *Braden*, Defendants point to the Eighth Circuit's statement that, " '[i]f, as the record develops, it were to become apparent that there were breaches of duty entirely unrelated to [the plaintiff's] injury, it could be appropriate to inquire into his standing to raise those separate claims,' " to support their argument that Plaintiffs must have allocated their accounts to each of the challenged funds in order to have standing. (Defs.' Supp. Opp. at 5 (quoting *Braden*, 588 F.3d at 592 n. 4).) This statement, however, does not imply that Plaintiffs lack standing to bring the asserted claims on behalf of the putative class. First, Defendants do not argue that any of the breaches alleged in this lawsuit are "entirely unrelated" to Plaintiffs' injuries. Thus, Defendants have not questioned Plaintiffs' standing to bring their own claims. Second, Plaintiffs have argued that Defendants' alleged breaches are based on "a uniform scheme" of unlawful conduct. (Pls.' Reply at 15.) In other words, Plaintiffs argue that the injuries to different funds are all related to the breaches alleged in their Complaint. And, as discussed above, whether they can represent Plan participants whose claims are based on other injuries is a matter of class certification, not standing.

amend the class definition to reflect that some injury is necessary in order for a participant to maintain a claim.[7]

## C. Motion to Certify Class Action

Plaintiffs seek to certify their claims as a class action. As noted above, Plaintiffs bring their claims pursuant to 29 U.S.C. § 1132(a)(2) and (3), which allow an ERISA plan participant to bring a civil action in a representative capacity on behalf of a plan for relief under § 1109. Under § 1109:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary....

29 U.S.C. § 1109(a).

 The Court has broad discretion in determining whether class certification is appropriate, and "[t]his discretion extends to defining the scope of the class." *Shapiro v. Midwest Rubber Reclaiming Co.,* 626 F.2d 63, 71 (8th Cir.1980) (citations omitted). "To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) [of the Federal Rules of Civil Procedure] and must satisfy one of three subsections of Rule 23(b)." *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1119 (8th Cir.2005) (citations omitted). Under Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). A trial court must engage in "a rigorous analysis" to ensure that these prerequisites are met. *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (internal quotation marks and citation omitted).

In their initial briefing on this motion, Plaintiffs proposed certification of the following class:

> All current and former participants and beneficiaries of the Ameriprise 401(k) Plan who were affected by the breach of fiduciary duties alleged in Plaintiffs' complaint, excluding those individuals who breached their fiduciary duties as alleged in Plaintiffs' complaint.

(Pls.' Class Cert. Mem. at 10.) As discussed above, Plaintiffs' prohibited transaction claims in Counts III, IV, V, and VII (except to the extent that they are based on the Columbia Contrarian Core Fund), as well as the breach of fiduciary duty claim alleged in Count V, were dismissed on summary judgment. In response to the Court's request for supplemental briefing regarding the effect of the dismissal on Plaintiffs' proposed class definition, Plaintiffs argue that "the dismissal of the prohibited transaction and Count V claims has no bearing on the class definition for the remaining claims" because ERISA's prohibited transaction provisions merely supplement the fiduciary duty provisions. (Pls.' Letter Brief [Doc. No. 359] at 2.) Thus, Plaintiffs assert that a "plan-wide class is appropriate" as to those claims. (*Id.* at 3.) Consequently, the Court finds that Plaintiffs are attempting to represent a class of individuals only in regard to the claims that remain subsequent to the Court's March 2014 Order on summary judgment,[8] and the

---

7. This amendment is discussed in Part III.C.6.

8. Like Plaintiffs, Defendants for the most part reiterated the arguments made in their initial briefing on this matter. They argued that "any claim that plaintiffs wish to pursue on a class basis must be championed by a named plaintiff who was injured by the alleged misconduct ...,

and the class must be limited to participants who can cite the same injury." (Defs.' Letter Brief [Doc. No. 357] at 2.) As for the prohibited transaction claims in Counts III and IV, Defendants argue that the class definition must be limited to those participants who invested in the Contrarian Core Fund and suffered the alleged injuries. (*See id.* at 2.) As for the fiduciary duty claims,

class definition must be amended accordingly.[9]

Plaintiffs have asserted that the proposed class period begins on October 1, 2005 (the date the Plan came into existence) and ends on the date through which they are able to calculate the Plan's losses (which, according to Plaintiffs, should be no later than the close of discovery). (Pls.' Class Cert. Mem. at 10.) Plaintiffs have asked the Court to appoint them as class representatives and their counsel, the law firm of Schlichter Bogard & Denton LLP, as class counsel. (*Id.* at 25.) They argue that each of the Rule 23(a) requirements, as well as Rule 23(b)(1), is satisfied.[10]

### 1. Numerosity

■■■ Plaintiffs first argue that they have satisfied the numerosity requirement under Rule 23(a). There are a number of relevant factors pertaining to this inquiry, the most obvious factor being the size of the proposed class. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir.1982). "In addition ..., the court may also consider the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the putative class members." *Id.* (citation omitted). Here, Plaintiffs assert that the Plan had at least 10,000 participants annually from 2005 through 2012 and that joinder of all of those participants is impracticable. (Pls.' Class Cert. Mem. at 13.) Defendants do not dispute that Plaintiffs have met the numerosity requirement. For these reasons, the Court finds that Rule 23(a)(1) is satisfied.

### 2. Commonality

■■■ One of the more contentious issues in this case is whether the commonality requirement of Rule 23(a) is met. " 'Com-monality requires the plaintiff to demonstrate that the class members have suffered the same injury.' " *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 376 (8th Cir.2013) (quoting *Dukes,* 131 S.Ct. at 2551). As the U.S. Supreme Court recently explained in *Wal–Mart Stores, Inc. v. Dukes:*

> [The plaintiffs'] claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

> "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

131 S.Ct. at 2551 (citation omitted). In that case, the lower courts approved certification of a class of current and former female employees of Wal–Mart who alleged that their supervisors' exercise of discretion regarding pay and promotion matters discriminated against women in violation of Title VII. *Id.* at 2547. The Supreme Court found that "in resolving an individual's Title VII claim, the crux of the inquiry is 'the reason for a particular employment decision,' " and that the plaintiffs sought to sue about millions of such decisions. *Id.* at 2552 (citation omitted). According to the Court, "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say

---

Defendants similarly argue that any class or subclass must be "defined in terms of the specific investment option or practice concerned." (*Id.* at 5.) Whether the case can move forward as a class action and, if so, whether a plan-wide class definition is appropriate will be discussed below.

9. This amendment is discussed in Part III.C.6.

10. Prior to addressing the enumerated provisions of Rule 23, Defendants devote a section of their briefing to the proposition that certification must

be denied because Plaintiffs have not demonstrated that they are able to prove their claims through common evidence. (Defs.' Class Cert. Opp. at 8.) Defendants proceed to argue that the Court must consider what the parties will have to prove and the Court must evaluate whether common answers will resolve the case. (*See id.* at 8–11.) This issue—i.e., whether Plaintiffs' claims can be resolved by common answers or evidence—is discussed below in regard to "commonality."

that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" *Id.* Pay and promotion decisions at Wal–Mart were, for the most part, committed to local supervisors' broad discretion, *id.* at 2547, and there was no proof of a companywide discriminatory policy, *id.* at 2556. Thus, the Court reversed the Ninth Circuit Court of Appeals, reasoning that:

> demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's. A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions.

*Id.* at 2554.

The Eighth Circuit has not applied *Dukes* in the ERISA context, but it did recently apply the standards articulated therein in *Luiken v. Domino's Pizza, LLC,* a case in which Domino's Pizza delivery drivers alleged that the delivery charge customers paid to Domino's was a gratuity wrongfully withheld from them. 705 F.3d at 372. The relevant Minnesota statute defined the term "gratuities" to include "an obligatory charge assessed to customers, guests or patrons *which might reasonably be construed by the guest, customer, or patron* as being a payment for personal services rendered by an employee." *Id.* (citation omitted). Because there was not a uniform context in which deliveries occurred, the Eighth Circuit determined that how a charge is reasonably construed in one transaction is not necessarily indicative of how it is reasonably construed in another. *Id.* at 376. The court analogized the facts to those in *Dukes* and reversed the district court's class certification order. *Id.* at 376, 378.

 The parties mainly rely on two nonbinding, pre-*Dukes* decisions to support their respective positions.[11] Plaintiffs argue that the present action is similar to *Tussey v.*

*ABB, Inc.,* No. 06–04305–CV–NKL, 2007 WL 4289694 (W.D.Mo. Dec. 3, 2007). In that case, brought pursuant to 29 U.S.C. § 1132(a)(2) and (3), the plaintiff sought to certify a class consisting of all present and former participants in the defendant company's 401(k) plan who were affected by the defendant fiduciaries' alleged breaches of duties in selecting expensive, proprietary funds and incurring unnecessary fees. *Id.* at *1. Regarding commonality, the U.S. District Court for the Western District of Missouri determined that the plaintiff had made a prima facie showing that excessive fees had been charged and that, "[b]ecause all members of the class are interested in these excess fees being returned to the Plan, there is clearly a common question of both fact and law that satisfies the commonality requirement." *Id.* at *5. The court disagreed with the defendants' argument that class certification was inappropriate because the individual plan participants had chosen different investment options. *Id.* According to the court, the focus should be on the *defendants'* conduct. *Id.* Relevant to the present case, the court noted the existence of the following common questions of law and fact: whether the defendants breached their fiduciary duties, whether the plan suffered any injuries, whether the class was entitled to relief, the point at which the Plan and Plan participants suffered injury, and the losses suffered by the Plan as a result of the breach. *Id.* at *6. The court determined that, "[b]ecause these issues involve the acts or omissions of [the defendants], they are common to all Plan participants who might bring an action on behalf of the Plan." *Id.*

Plaintiffs point out that the *Tussey* defendants' petition for permission to file a Rule 23(f) appeal of the class certification ruling was denied by the Eighth Circuit,[12] (Pls.' Class Cert. Mem. at 11), and argue that, as in *Tussey,* the commonality requirement is satisfied here because there are common

---

11. The Court notes that the plaintiffs in both of those cases were represented by counsel for Plaintiffs in the present action.

12. Several of the defendants had requested review of the district court's findings that:
(1) the fiduciary duty claims satisfied the commonality and typicality requirements because of

the derivative nature of the claims, and (2) the adequate representation requirement was met where there allegedly were conflicts of interest among the participants. *See* Pet. of Defs. ABB Inc. et al. Under Fed.R.Civ.P. 23(f) for Permission to Appeal a Class Certification Order, at 7, *Tussey v. ABB Inc.,* No. 07–8023 (Dec. 17, 2007).

questions upon which the proposed class members' claims depend, including:

whether each defendant is a fiduciary; whether each defendant breached his or her duty or engaged in a prohibited transaction in causing the Plan to pay excessive recordkeeping fees; whether each defendant breached his or her duty in causing the Plan to invest in imprudent and conflicted proprietary investment vehicles; whether the Plan suffered losses from these breaches and how to calculate the Plan's losses; whether the defendants gained any profit from the use of Plan assets and how to calculate the profits that must be restored to the Plan; and whether each defendant is jointly and severally liable for these breaches and losses under 29 U.S.C. § 1105(a).

(*Id.* at 15.) According to Plaintiffs, "[t]he evidence required to prove these facts are Plan-level facts and thus the same for all Plan participants and beneficiaries." (*Id.*) Even so, Plaintiffs assert that not every question of law or fact must be common to every putative class member—in other words, the putative class members do not need to be identically situated. (*Id.* at 13–14.)

Defendants, on the other hand, argue that this Court should follow the Seventh Circuit's decision in *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir.2011). In that case, also brought pursuant to 29 U.S.C. § 1132(a)(2) and (3), the plaintiffs sought to certify a class consisting of all present and former participants in the defendant company's 401(k) plan who were affected by the defendant fiduciaries' alleged breaches of duties. *Id.* at 577. As alleged in the complaint, the breaches consisted of including imprudent investment options in the plan and incurring excessive fees. *Id.* at 576. Defendants rely on the Seventh Circuit's statement that " '[a] claim of imprudent management ... is not common if the alleged conduct harmed some participants and helped others.' " (Defs.' Class Cert. Opp. at 14 (quoting *Spano*, 633 F.3d at 588).) However, that statement was part of the court's discussion of whether there was a *common identity of interest under Rule 23(b)(1)(B). See Spano*, 633 F.3d at 588. As to whether there existed *common issues of law or fact under Rule 23(a)(2)*, the court stated:

Rule 23(a)(2) does not demand that every member of the class have an identical claim. It is enough that there be one or more common questions of law or fact; supplemental proceedings can then take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member....

*Id.* at 585. Thus, the court disagreed with the defendants' argument that the individual participants' ability to choose among eleven investment options destroyed commonality, stating:

By focusing exclusively on the final step of the defined-contribution plan—that is, the participant's decisions with respect to the allocation of his or her funds—it ignores the fact that fund participants operate against a common background.... The assertion that [the defendant] imposes excessive fees on all participants, as well as the assertion that [the defendant] has failed to satisfy its fiduciary duties in its selection of investment options, both describe problems that would operate across the plan rather than at the individual level. We thus conclude ... that the class met the commonality requirement of Rule 23(a)(2).

*Id.* at 585–86 (internal citation omitted).

Here, Defendants argue that it is the *evidence* related to a disputed issue that must be common across all putative class members. (Defs.' Class Cert. Opp. at 12.) Therefore, Defendants assert, commonality is not satisfied because Plaintiffs' imprudent selection and retention, disloyalty, and excessive fee claims all require evidence specific to both the funds and the participants. (*See id.* at 12–27.) According to Defendants, the evidence will "var[y] from fund to fund, and from quarter to quarter," and "[t]hese variations create sharp conflicts among participants." (*Id.* at 16.) Defendants point to the following example relating to a claim for imprudent retention of a fund:

[I]f the finder of fact concludes that imprudence as to one fund was established only late in the Plan's history, participants

whose sub-benchmark investment performance is owed to being in the option for a brief period beforehand have no plausible claim that they suffered injury from [Defendants'] imprudence in retaining that option.

(*Id.*) Therefore, Defendants argue, Plaintiffs cannot establish commonality even as to a single fund. (*See id.* at 17–18, 20–22.)

The Court is not persuaded by Defendants' arguments. As detailed by Plaintiffs, there are numerous questions of law or fact in this case that are capable of classwide resolution. For example, the questions of whether Defendants breached their fiduciary duties by causing the Plan to select imprudent investment options or to pay excessive recordkeeping fees, and whether the Plan suffered losses from those breaches, are common to all Plan participants' claims and, therefore, will generate answers common to all of the putative class members.

In fact, each of the cases discussed above—including the Seventh Circuit opinion relied upon by Defendants—supports finding commonality in this case. As noted by Plaintiffs, it is not alleged that "different Ameriprise employees engag[ed] in specific unlawful acts directed against specific participants—like the multifarious discriminatory acts in *Dukes*." (Pls.' Reply at 5.) Rather, Plaintiffs allege that "the same fiduciaries engaged in the same imprudent and disloyal acts regarding the same Plan investments and recordkeeping fees for every Plan participant." (*Id.*) Similarly, unlike the context of the delivery transactions that varied as to each putative class member in *Luiken, Defendants' decisions* in this case to invest in or retain certain funds for *the Plan* were the same for each putative class member. The determination of each individual class member's recovery is a separate issue to be reached only if the answers to those common questions indicate that Defendants are liable to the Plan. Thus, like the courts in both *Tussey* and *Spano* that were presented with class allegations of imprudent selection of investments and excessive fees in a 401(k) plan, this Court finds that Rule 23(a)(2)'s commonality requirement is satisfied.

### 3. Typicality [13]

The parties also dispute whether the typicality requirement is satisfied in this case. While the burden of demonstrating typicality is not "onerous," a party seeking class certification must show that "the representative is not alone in his or her dissatisfaction." *Paxton,* 688 F.2d at 562 (citation omitted). In other words, "Rule 23(a)(3) requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Id.* (citations and internal quotation marks omitted). Thus, Rule 23(a)(3) "is generally considered to be satisfied 'if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory.'" *Id.* at 561–62 (quoting C. Wright & A. Miller, *Fed. Prac. & Proc.* § 1764 n. 21.1 (Supp. 1982)). This is true even if there are "[f]actual variations in the individual claims." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996) (citation omitted).

To exemplify these rules, the Eighth Circuit in *Alpern v. UtiliCorp United, Inc.* pointed to the Third Circuit's opinion in *Hoxworth v. Blinder, Robinson & Co.* and noted that the Third Circuit had "affirm[ed] over typicality objections a class of securities investors who had purchased or sold any one of twenty-one securities during a certain period." *Id.* (citing *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir.1992)). In *Hoxworth,* the court found that typicality was "fully satisfie[d]" where there were class representatives for fifteen of the twenty-one class securities. 980 F.2d at 923. Likewise, in *Alpern,* the court found that the typicality requirement was satisfied where the same events and legal theories were the basis for the named plaintiff's and the putative class members' claims. 84 F.3d at 1540. In that securities fraud action, the named plaintiff sought to represent a class of UtiliCorp common stock purchasers. *Id.* at 1539. However, because the named plaintiff had not made stock purchases on the open market, but rather through the corporation's stock pur-

---

**13.** Defendants combined their arguments relating to typicality and adequacy of representation. While the Court has attempted to categorize their points, the Court notes that there may be some overlap within its discussion of these Rule 23(a) requirements.

chase plan, the district court found that his claim was atypical of the class claims. *Id.* at 1540. The Eighth Circuit disagreed, finding his claims to be typical of the class claims because the claims were all based on the misleading nature of the corporation's financial statements and were all brought pursuant to the same provisions of the securities laws. *Id.* The court concluded that "[t]he fact that damage calculations might differ slightly for [stock purchase plan] and open market purchasers is a minor matter in comparison with these fundamental similarities." *Id.* (citation omitted); *see also DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174–75 (8th Cir.1995) (finding typicality to be satisfied in a Real Estate Settlement Procedures Act case because, although the class members held different mortgage instruments, they sought the same relief).

 Here, Plaintiffs argue that all putative class members have similar grievances because they are all participants in the Plan and the alleged breaches of fiduciary duties were directed to the Plan rather than to individual participants. (Pls.' Class Cert. Mem. at 16–17.) Plaintiffs assert that each class member's claim is based on the same events (i.e., the breach of fiduciary duties that were owed to the Plan) and the same legal and remedial theory (i.e., enforcement through § 1132(a)(2) of Defendants' obligations under § 1109(a)). (*Id.*) Plaintiffs further argue that proving the breaches and the Plan's damages will not involve individualized inquiries and that the individual participants' varying damages are not relevant to typicality. (*Id.* at 17–18.) On the other hand, Defendants argue that Plaintiffs' claims are not typical of the putative class members' claims because Plaintiffs did not invest in all of the challenged investment options. (Defs.' Class Cert. Opp. at 28–29.) In addition, Defendants assert that even where Plaintiffs did invest in the same funds as other putative class members, the differing timeframes for the investments destroys typicality because

the funds' performance and fees varied over the years.[14] (*Id.* at 29–31.)

Plaintiffs and Defendants again rely on *Tussey* and *Spano*, respectively, to support their arguments. In *Tussey*, the U.S. District Court for the Western District of Missouri found typicality to be satisfied even though the named plaintiff had not participated in all of the challenged investment alternatives and even though the proposed class members had differing investment strategies and practices. 2007 WL 4289694, at *2, *7. In contrast, the Seventh Circuit in *Spano* found that typicality was lacking where the named plaintiffs had not invested in all of the same funds as the proposed class members. 633 F.3d at 586.

Contrary to the Seventh Circuit in *Spano*, the Eighth Circuit in *Alpern* signaled that the fact that Plaintiffs have not invested in all of the challenged investment options is not a bar to class certification. Nor is the fact that the putative class members invested in different options at different times. Rather, as Plan participants alleging breaches of the fiduciary duties Defendants owed to the Plan, the class members are seeking redress of similar grievances under the same legal and remedial theories. As noted by another judge in this District:

> Although Defendant[s] argue[ ] against class certification based on the claim that each individual class member purchased different amounts of stock at different times for different reasons, this same argument could be made for virtually every class action involving securities. Taken to its logical conclusion, no class action would ever by certified if the exactness demanded by Defendant[s] was enforced.

*In re ADC Telecomms. ERISA Litig.*, No. Civ. 03–2989 (ADM/FLN), 2005 WL 2250782, at *3 (D.Minn. Sept. 15, 2005). This Court agrees with this reasoning and finds that typicality is satisfied in this case.

14. Defendants also contend that Plaintiffs' claims are not typical of the class because Plaintiffs are subject to a unique statute of limitations defense. (*See* Defs.' Class Cert. Opp. at 32–34.) Since the briefing on this motion, the Court granted Defendants' motion for summary judgment as to certain claims on statute of limitations grounds.

And, as discussed above, Plaintiffs have indicated that they are no longer seeking class certification regarding those particular claims. Therefore, the Court will not address Defendants' typicality argument to the extent that it is based on statute of limitations issues.

### 4. Adequacy of representation

The parties also dispute whether Plaintiffs are adequate representatives of the proposed class. Rule 23(a)(4) focuses on "whether the class representatives will vigorously prosecute the interests of the class through qualified counsel" and whether "the class representatives have common interests with the members of the class." *Paxton*, 688 F.2d at 562–63 (citations omitted). Thus, this inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (citation omitted).

There appears to be no dispute in this case that Plaintiffs' attorneys are adequate class counsel. Plaintiffs have identified numerous ERISA actions in which their attorneys have acted as class counsel. (Pls.' Class Cert. Mem. at 21.) And, as noted by Plaintiffs, their attorneys have actively participated in motion practice and discovery in the present matter. (*Id.* at 22.) Defendants do not argue to the contrary. Accordingly, the Court finds that Plaintiffs' attorneys are adequate class counsel.

Defendants do, however, dispute that Plaintiffs have common interests with the class. As they did in regard to the typicality requirement, Defendants argue here that Plaintiffs cannot adequately represent putative class members who engaged in different investment patterns.[15] (Defs.' Class Cert. Opp. at 28–31.) For example, Defendants assert that a named plaintiff who invested in a particular fund at a time when the fund's performance exceeded benchmark returns will be a poor representative of a class member who invested in that fund at another time and claims performance injury. (*See id.* at 29.) Likewise, Defendants contend that a named plaintiff who invested in a fund at a time when the management fees were below the benchmark cannot adequately represent class members who invested at a time when

the fees exceeded the benchmark. (*See id.* at 31.)

Plaintiffs, on the other hand, argue that Defendants have mischaracterized their claims. (Pls.' Reply at 7.) As for their prudence claims, Plaintiffs contend that Defendants "selected bad proprietary funds despite the availability of good nonproprietary funds" and that Defendants selected share classes that were more expensive than other classes or versions of the same investments. (*See id.* at 8–9.) According to Plaintiffs, the measure of loss under their theory of the case does not depend in either case on a comparison to Defendants' benchmark. (*See id.* at 8–10.) Rather, losses are calculated by comparing the performance of the chosen fund to a prudent alternative, or by comparing the fees charged for the chosen share classes to the fees charged for the available alternatives. (*See id.*) Thus, the fact that an account had no loss does not render the fund prudent as to that particular investor, and the fact that a fee was lower than Defendants' benchmark does not render it prudent if a lower-fee alternative was available. (*See id.*) Similarly, Plaintiffs argue that their record-keeping fee claim is based on Defendants' failure to use competitive bidding, negotiate a specific fee, and ensure that the fee was not excessive. (*Id.* at 10–11.) Plaintiffs contend that the reasonableness of a fee and any losses from excessive fees are to be determined at the Plan level and that the allocation of recovered losses among individual Plan members is not relevant to class certification. (*See id.*)

In addition, Plaintiffs criticize Defendants' " 'optimal breach date' theory of class conflicts," which Plaintiffs contend has been rejected by numerous courts. (*Id.* at 2.) Plaintiffs describe the theory as follows: "Because each participant invested in different funds at different times, the theory goes, they conflict as to what breach date and measure of loss best serves them individually and can

---

**15.** As with typicality, Defendants also argue that Plaintiffs cannot adequately represent putative class members whose claims are not subject to a unique statute of limitations defense. (*See* Defs.' Class Cert. Opp. at 32–34.) As discussed in footnote 14, Defendants prevailed in part on their motion for summary judgment on statute of

limitations grounds, and Plaintiffs have indicated that they are no longer seeking class certification regarding the dismissed claims. Therefore, the Court will not address Defendants' adequacy of representation argument to the extent that it is based on statute of limitations issues.

never be collected into a single class action." (*Id.*) Rather, Plaintiffs argue that the derivative nature of a § 1132(a)(2) action renders individual preferences as to breach dates and losses irrelevant to class certification. (*Id.*)

The Court finds that there are no conflicts of interest among the named Plaintiffs and the putative class members that would render Plaintiffs inadequate class representatives. As aptly summarized by another district court addressing a similar "optimal breach date" argument by the defendants [16] in an ERISA action:

> Defendants' concern that individualized "optimal breach dates" create intra-class conflicts is misplaced and, if heeded, would effectively eliminate all ERISA fiduciary breach of duty class actions. While it may be true that each individual participant in the Plans would likely be affected differently by varying the breach date, this is a red herring.... Defendants repeatedly argue that the conflict arises because Plaintiffs' counsel will pick a date to advocate for, which date will necessarily advantage some class members and disadvantage others. But even if that's true, the Court does not see how that creates a preclusive intra-class conflict. Plaintiffs' counsel is perfectly free to advocate whatever is best for the Plans, but the Court will make its determination of if and when Defendants breached their fiduciary duties to the Plans based on the evidence in the record and the controlling law, irrespective of the "preferred" or "optimal" breach dates for any given individual.

*Shanehchian v. Macy's, Inc.*, No. 1:07–CV–00828, 2011 WL 883659, at *7 (S.D.Ohio Mar. 10, 2011); *see also, e.g., Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 188–89, 192 (W.D.Mo.2009) (rejecting the defendants' argument that the named plaintiff would have to show that the investment became imprudent on a different, and less optimal, date than that upon which other class members would rely because "[the named plaintiff] has an incentive to maximize recovery to the Plan"). As noted by Plaintiffs, the Secretary of Labor supported this view in an amicus curiae brief filed in *Lively v. Dynegy Inc.:*

> In an individual account plan, substantial differences in the investment behavior of plan participants do not amount to legally relevant conflicts that go to class suitability. Under [29 U.S.C. § 1132(a)(2)], the only relief participants can seek is relief to the plan. Therefore, differences in participants' investment behavior are irrelevant at least until after fiduciary liability has been determined and assets restored to the plan; only then are allocations made to individual accounts. As a result, in determining whether to certify a class, the district court correctly focused on the conduct of the Defendants' behavior in offering and holding Dynegy stock rather than on the individual investment behaviors of the participants.

Br. of the Sec. of Labor as Amicus Curiae in Supp. of Pls.-Appellees at 19, *Lively v. Dynegy Inc.*, No. 07–2073, 2007 WL 3081709 (7th Cir. Oct. 10, 2007). Likewise, this Court finds that Plaintiffs' varying investment patterns do not render them inadequate class representatives and are not a bar to class certification. Therefore, Rule 23(a)(4)'s adequate representation requirement is met.

### 5. Rule 23(b)(1)

Although Plaintiffs' Second Amended Complaint states that they are seeking class certification under Rule 23(b)(1) or (b)(3), Plaintiffs have confirmed in their motion papers that they seek certification only under Rule 23(b)(1). (*See* 2d Am. Compl. ¶ 106; Pls.' Class Cert. Mem. at 22–25; Pls.' Reply at 6.) As an initial matter, Defendants argue that cases in which a substantial monetary recovery is sought are not properly certified under Rule 23(b)(1), where notice and the right to opt out are not required. (Defs.' Class Cert. Opp. at 35–36.) Defendants rely on the Supreme Court's opinions in *Ortiz v. Fibreboard Corp.* and *Dukes.* (*See id.*) However, the Court's warning against the "adventurous application of Rule 23(b)(1)(B)" in *Ortiz* was given in the context of an "attempt to aggregate individual tort claims on a limited fund rationale." 527 U.S. 815, 845,

---

**16.** The Court notes that the defendants' expert witness in that case, Dr. Turki, is also the expert witness for Defendants in the present case.

119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). That is not the situation here, where the claims are made on behalf of the Plan rather than individual participants. And, Rule 23(b)(1) was not at issue in *Dukes*. Rather, the Court in that case analyzed whether claims for individualized monetary relief under Title VII could be certified under *Rule 23(b)(2)* and concluded that "they may not, at least where ... the monetary relief is not incidental to the injunctive or declaratory relief." 131 S.Ct. at 2557. Therefore, Defendants have not demonstrated the existence of a blanket prohibition on Rule 23(b)(1) class certification of actions in which monetary relief is sought. *See Jones*, 257 F.R.D. at 193 (rejecting the defendant's argument that Rule 23(b)(1)(A) is not available where a plaintiff seeks monetary relief because that requirement is not present in the Rule).

Under Rule 23(b)(1), a class action is proper if:

> prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed.R.Civ.P. 23(b)(1). Plaintiffs contend that class certification is appropriate under either subdivision. (Pls.' Class Cert. Mem. at 22.) The Court agrees.

### a. Risk of inconsistent adjudications

Plaintiffs first argue that class certification is proper in this case under Rule 23(b)(1)(A). (Pls.' Class Cert. Mem. at 22–24.) Plaintiffs assert that Defendants owed fiduciary duties to the Plan and that the Plan's assets were held in trust for the benefit of all participants. (*Id.* at 23.) Therefore, Plaintiffs conclude, allowing individuals to pursue § 1132(a)(2) actions on behalf of the Plan would result in varying determinations of whether—and which—Defendants breached their duties, and the amount of damages. (*Id.*) Plaintiffs provide the following examples:

> For instance, for the recordkeeping fees claims the Court will have to determine Plan losses by deciding ... what was a reasonable recordkeeping fee for the Plan and how much the Plan in fact paid for recordkeeping through revenue sharing and other sources. Separate individual adjudications as to those elements will establish incompatible standards for Defendants in terms of how much in losses and/or profits they must restore to the Plan under § 1109(a). In addition, one court could order Defendants to engage in competitive bidding for Plan recordkeeping services, ... and another court could hold Defendants are not obligated to engage in competitive bidding.... One court could rule all of the proprietary funds were imprudent and measure Plan losses by comparison to one set of alternatives; another court could find only some or none were imprudent or measure losses by a different standard.... One court could order the removal of all Defendants as Plan fiduciaries and another could rule the Defendants may remain as fiduciaries.

(*Id.* at 23–24.)

Defendants, on the other hand, argue that the risk that Defendants would be ordered to pay damages to some individual class members but not to others is insufficient. (Defs.' Class Cert. Opp. at 36–37.) Rather, Defendants assert that the real problem arises when the " 'opposing party's ability to pursue a uniform *continuing* course of conduct' " is impaired. (*Id.* at 37 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1193 (9th Cir.2001))). Defendants assert that Plaintiffs have not identified any potential outcomes in which Defendants would be subject to "*incompatible* standards of conduct." (*Id.* at 38.) Finally, Defendants argue that Rule 23(b)(1)(A) certification is not available if the non-moving party opposes class certification. (*Id.* at 40.)

The Court finds that class certification in this case is properly granted under Rule 23(b)(1)(A). First, according to the Advisory Committee notes, class certification under

this subdivision is appropriate when "[o]ne person may have rights against, or be under duties toward, numerous persons constituting a class, and be so positioned that conflicting or varying adjudications in lawsuits with individual members of the class might establish incompatible standards to govern his conduct." Fed.R.Civ.P. 23(b), Advisory Committee notes (1966 Amendment). As Plaintiffs have noted, Defendants owe duties toward the Plan. Therefore, contrary to Defendants' assertions, separate lawsuits by various individual Plan participants to vindicate the rights of the Plan could establish incompatible standards to govern Defendants' conduct, such as computation of varying "reasonable" record-keeping fees for the Plan, a requirement that Defendants engage in competitive bidding for Plan record-keeping services, determinations of differing "prudent alternatives" against which to measure the proprietary investments, or an order that Defendants be removed as fiduciaries.

Second, neither Plaintiffs nor Defendants have cited to binding authority to support their arguments regarding the incompatibility of multiple lawsuits in this instance. That being said, the Court agrees with the authorities—both within and outside of this Circuit—which have concluded that the present situation falls under Rule 23(b)(1)(A). *See, e.g., Harris v. Koenig,* 271 F.R.D. 383, 395 (D.D.C.2010) ("[T]his Court could enter a ruling to restore Plan assets, remove Plan fiduciaries, or reform Plan investigative practices and monitoring practices that would directly contradict another Court's ruling on the very same issues. In that event, Defendants would be faced with incompatible standards of conduct with respect to their duties and obligations toward the Plan."); *Jones,* 257 F.R.D. at 193–94 (finding Rule 23(b)(1)(A) class certification to be appropriate because "[i]f one court ordered full restitution to the Plan and removal of the fiduciaries, but another ordered differently, those orders would establish incompatible standards of conduct for Defendants"); *Shanehchian,* 2011 WL 883659, at *9 ("[B]ecause the fiduciary duties at issue … are owed to the Plans, thousands of separate individual actions could result in differing standards of duty and, thus, differing standards of conduct

with respect to Defendants and the Plans, which would be an untenable outcome.").

Finally, Defendants have not demonstrated that an objection to Rule 23(b)(1)(A) class certification by the non-moving party, whom the Rule is meant to protect, is outcome-determinative. In each of the cases cited by Defendants to support their argument on this point, the court first found that the case was unsuitable for certification under Rule 23(b)(1)(A) because the "plaintiffs [were] not suing for different [and/or] incompatible relief." *Fogie v. Rent–A–Center, Inc.,* 867 F.Supp. 1398, 1403 (D.Minn.1993) (citation omitted); *In re St. Jude Med., Inc.,* No. MDL 01–1396 (JRT/FLN), 2003 WL 1589527, at *17 (D.Minn. Mar. 27, 2003) (citation omitted). Those courts supplemented their conclusions by noting that a defendant who objects to class certification under this Rule waives its protections. *See Fogie,* 867 F.Supp. at 1403 (citation omitted); *In re St. Jude Med., Inc.,* 2003 WL 1589527, at *17 (citation omitted).

█ As noted by another district court within the Eighth Circuit: "Rule 23(b)(1)(A) certification is particularly appropriate where a central element of plaintiffs' claims are not an individual matter; here the central questions concerning whether the fiduciaries breached their duties to the Plan are not individual." *Jones,* 257 F.R.D. at 194. Similarly, the central questions in this case concern whether Defendants breached their duties to the Plan. For these reasons, this Court finds that class certification under Rule 23(b)(1)(A) is warranted in this case.

### b. Risk of impaired ability to protect interests

█ Plaintiffs next argue that class certification is proper in this case under Rule 23(b)(1)(B). (Pls.' Class Cert. Mem. at 24–25.) Plaintiffs assert that, as a practical matter, the adjudication of one participant's § 1132(a)(2) action will influence a subsequent adjudication of the same claims brought by another participant and, thus, could effectively dispose of other participants' actions on behalf of the Plan. (*Id.* at 24.) Plaintiffs also point to the Advisory Committee notes to Rule 23, which provide

that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed.R.Civ.P. 23, Advisory Committee notes (1966 Amendment).

Defendants, on the other hand, argue that the example in the Advisory Committee notes upon which Plaintiffs rely applies only to "a class that shares a *common and undivided* interest in the proceeds of a trust," and that here each putative class member has "a particular and separate interest measured by the value of her or her own account." (Defs.' Class Cert. Opp. at 40–41.) Defendants rely on both *LaRue v. DeWolff, Boberg & Assocs.* and *Spano*. In *LaRue*, an individual participant in a defined contribution plan alleged that the plan administrator breached its fiduciary duties by failing to make requested changes to the participant's account. 552 U.S. 248, 251, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008). The Supreme Court held that "although § 502(a) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* at 256, 128 S.Ct. 1020. In *Spano*, the Seventh Circuit found that there was no "necessary identity of interest among all class members" where the conduct at issue harmed some participants and helped others. 633 F.3d at 588. Without that common interest, the Seventh Circuit concluded, it could not be assumed that adjudication of one participant's claim would be dispositive of, or substantially impair, another participant's interests. *Id.*

The Court finds that class certification in this case is proper under Rule 23(b)(1)(B). First, as in the example provided in the Advisory Committee notes, Plaintiffs here "charge a breach of trust by a fiduciary, affecting a large class of beneficiaries, which requires an accounting to restore the subject of the trust." *In re Merck & Co.,* MDL No. 1658(SRC), 2009 WL 331426, at *10 (D.N.J. Feb. 10, 2009); *see Shanehchian,* 2011 WL 883659, at *10 (finding that a case in which the plaintiffs allege breaches of fiduciary

duties affecting a 401(k) plan and the plan's thousands of participants "falls squarely within the meaning articulated by the Advisory Committee"). Second, *LaRue's* authorization of individual ERISA actions under § 502(a) in the defined contribution plan context does not render class actions in that context improper. *See Spano,* 633 F.3d at 591 ("Importantly, *LaRue* was an individual case, and so it does not answer the question whether, or when, the kind of suit it was addressing may proceed as a class action. In our view, it would be inconsistent with *LaRue* to assume that class actions are impossible in these cases."). Third, and more importantly, neither *LaRue* nor *Spano* speaks to the present situation where Plaintiffs seek not only restoration of the Plan's monetary losses but also removal of Defendants as fiduciaries. (*See* Compl. ¶¶ 184–201.) Such relief, if the Court were to order it, would be dispositive of non-party participants' interests. *See In re Merck,* 2009 WL 331426, at *10 ("If the prudence claims proceeded individually, and one court removed a Plan fiduciary, this would be, as a practical matter, dispositive of the interests of the other Plan members in that particular regard."). For these reasons, the Court finds that class certification is also appropriate under Rule 23(b)(1)(B) in this case.

#### 6. Class Definition

The Court finds that Plaintiffs' claims may properly be resolved in a class action and, therefore, that certification of a class is appropriate. As discussed above, two modifications to Plaintiffs' proposed class definition are necessary. First, the definition must be amended to reflect the Court's ruling on summary judgment. Thus, the reference to the "breach of fiduciary duties alleged in Plaintiffs' complaint" must be narrowed to: "(1) the prohibited transactions alleged in Counts III and IV of Plaintiffs' Second Amended Complaint to the extent that those transactions are based on the Columbia Contrarian Core Fund, and (2) the breach of fiduciary duties alleged in Counts I, II, VI, and VII of Plaintiffs' Second Amended Complaint." Likewise, the reference to "those individuals who breached their fiduciary duties as alleged in Plaintiffs' complaint"

must be changed to "those individuals who engaged in the prohibited transactions or breached their fiduciary duties as alleged."

Second, the reference to participants and beneficiaries of the Plan "who were affected by" the alleged wrongful conduct on its face could refer to individuals who suffered no resulting injuries. Therefore, the definition must instead refer to participants and beneficiaries "who were injured by" the alleged wrongful conduct. This modification will address Defendants' concerns regarding class members' standing.

Defendants also argue that the class definition must be ascertainable based on objective criteria. (*See* Defs.' Class Cert. Opp. at 11.) The Court finds the above definition to be satisfactory at this stage of the litigation. However, a ruling on class certification "may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)(C). Therefore, should it become clear upon completion of discovery (or at some other time prior to judgment) that the class definition requires amendments in addition to those provided for herein, the Court may revisit the issue.

The Court, therefore, certifies the following class:

All current and former participants and beneficiaries of the Ameriprise 401(k) Plan who were injured by (1) the prohibited transactions alleged in Counts III and IV of Plaintiffs' Second Amended Complaint to the extent that those transactions are based on the Columbia Contrarian Core Fund, and (2) the breach of fiduciary duties alleged in Counts I, II, VI, and VII of Plaintiffs' Second Amended Complaint, excluding those individuals who engaged in the prohibited transactions or breached their fiduciary duties as alleged.

## IV. ORDER TO SHOW CAUSE

Various submissions related to this motion were filed under seal. If the parties believe that any portion of this Order warrants redaction, the Court orders the parties to show cause ten days from the date of this Order, stating why the Order should not be unsealed and specifying any portion of the order warranting redaction.

## V. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Strike Supplemental Memorandum in Opposition to Plaintiffs' Motion to Certify Class Action [Doc. No. 287] is **DENIED.**

2. Plaintiffs' Motion to Certify Class Action [Doc. No. 215] is **GRANTED.**

3. The Court certifies the following class:

All current and former participants and beneficiaries of the Ameriprise 401(k) Plan who were injured by (1) the prohibited transactions alleged in Counts III and IV of Plaintiffs' Second Amended Complaint to the extent that those transactions are based on the Columbia Contrarian Core Fund, and (2) the breach of fiduciary duties alleged in Counts I, II, VI, and VII of Plaintiffs' Second Amended Complaint, excluding those individuals who engaged in the prohibited transactions or breached their fiduciary duties as alleged.

4. The named Plaintiffs are appointed as class representatives.

5. The law firm of Schlichter Bogard & Denton LLP is appointed as class counsel.

6. The parties are ordered to show cause ten days from the date of this Order why the Order should not be unsealed, and to specify any portion warranting redaction.